2008 ME 185

**Denise KANE**

v.

**COMMISSIONER OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2008.

Decided: Dec. 11, 2008.

Katherine R. McGovern, Esq. (orally), Thomas H. Kelley, Esq., Pine Tree Legal Assistance, Inc., Portland, ME, for Denise Kane.

G. Steven Rowe, Attorney General, Renee Guignard, Assistant Attorney General (orally), Portland, ME, for the Department of Health & Human Services.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Denise Kane, a foster parent, appeals from a judgment entered in the Superior Court (Cumberland County, *Delahanty, J.*) affirming the final action of the Commissioner of the Department of Health and Human Services (DHHS), pursuant to 22 M.R.S. § 4088 (2007), which substantiated Kane for neglect, threat of neglect, emotional abuse, and threat of emotional abuse of two foster boys in her care, and dismissing Kane's two independent claims. A finding that a person is substantiated for neglect or abuse of a child is significant because, as the Court was advised at oral argument, persons who have been substantiated for child abuse or neglect are identified in a DHHS database available to potential employers, parents seeking daycare providers, and others who might avoid employing or relying on an individual who has been "substantiated."

[¶ 2] Kane asserts that the Commissioner: (1) failed to provide adequate standards regarding what conduct warrants a finding of substantiated for "abuse or neglect"[1] and exceeded her statutory authority by using the terms "threat of neglect"

---

1. The Child and Family Services and Child Protection Act defines "abuse or neglect" as: [A] threat to a child's health or welfare by physical, mental or emotional injury or impairment, sexual abuse or exploitation, deprivation of essential needs or lack of protection from these or failure to ensure compliance with school attendance requirements under Title 20-A, section 3272, subsection 2, paragraph B or section 5051-A, subsection 1, paragraph C, by a person responsible for the child.

22 M.R.S. § 4002(1) (2007). The definition was amended after DHHS substantiated Kane in 2004; however, the change does not affect the statutory analysis in this case. *See* P.L. 2007, ch. 304, § 10 (adding to the definition of "abuse or neglect" the "failure to ensure compliance with school attendance requirements under Title 20-A, section 3272, subsection 2, paragraph B or section 5051-A, subsection 1, paragraph C") (effective Sept. 20, 2007).

and "threat of emotional abuse"; (2) applied an improper standard that was not supported by substantial evidence; (3) erred in excluding evidence regarding Kane's care of other foster children; (4) failed to make adequate findings of fact; and (5) failed to conduct a meaningful review of the hearing officer's decision. Kane also asserts that the court erred in dismissing her independent claims asserting civil rights violations. Because the hearing record and the hearing officer's findings, adopted by the Commissioner, do not support the "substantiated" for "abuse or neglect" conclusion, we vacate the Commissioner's decision.

## I.  CASE HISTORY

[¶ 3]  Kane served as a DHHS foster mother to two boys for two separate periods—October 21, 2003, to November 4, 2003, and December 31, 2003, to March 11, 2004.  She also provided foster care for an infant from September 2, 2003, to February 9, 2004.

[¶ 4]  As a result of complaints primarily relating to Kane's availability and accessibility by the boys' DHHS caseworker, their guardian ad litem, and their daycare provider, DHHS began a substantiation investigation of Kane in early 2004.  A preliminary investigation report indicated that abuse or neglect was substantiated due to "neglect and threat of neglect" and "emotional abuse and threat of emotional abuse."

[¶ 5]  Kane appealed the initial decision through the DHHS administrative appeals process to the Commissioner.  The Commissioner ordered an administrative hearing on the results of the investigation. Because of a backlog of administrative hearing requests, the hearing, which covered three days, did not occur until mid–2006.

[¶ 6]  After the conclusion of the hearing, the hearing officer issued a recommended decision with extensive findings. The hearing officer concluded that Kane "perpetrated emotional abuse or neglect, threat of neglect and threat of emotional abuse as to these two children in her care per Respondent's substantiation letter of September 15, 2004."  The hearing officer's significant findings regarding the abuse and neglect issue were as follows:

—Denise Kane admitted that she had problems with her relationship with the Dept. and the daycare facility, e.g. with her expectations, communications, feedback and having to deal with various Dept. staff.

—Both the Dept. and the daycare center staff attempted numerous times to contact Ms. Kane in regard to issues with the boys, e.g. visits, sickness, but often she did not return calls for long periods of time.  Denise Kane acknowledged that she would turn off her cell telephone when she was in visits, meetings or even while traveling and performing these other duties and therefore would not receive calls in a timely manner from the daycare center or Dept. staff.

—On January 10, 2004 the boy[s'] Guardian ad Litem ("GAL") . . . attempted to visit them at Ms. Kane's home, but was refused entry by Ms. Kane.

—Ms. Kane was not cooperative in scheduling visits by the Dept. or the GAL and sought to limit the area of the house such persons could see during a visit.

—Ms. Kane also exhibited a similar pattern of non-cooperation with the Dept. IAU investigator in failing to respond to calls in a timely manner or following through with scheduled meetings.

—Daycare staff raised valid issues with Ms. Kane about inadequate meals being

provided, but Ms. Kane became defensive and alleged that the meals provided were nutritious, although the day care reported that the boys were still hungry and were even taking food from other children.

—Daycare staff raised valid issues of the physical health of the boys (e.g. fevers, very cold hands, severely chapped skin, etc.), but Ms. Kane often could not be reached to come pick them up when they were sick, or would not respond to messages for long periods of time, or would deny that the child/children were ill and sometimes not take them to a doctor or she would become upset with the daycare staff for reporting these issues to her.

—Daycare staff observed Ms. Kane repeatedly treating the boys roughly (yanking them and jerking one out of a classroom) and yelling at them or failing to respond in a comforting matter (e.g. when [one of the boys] slipped and fell outside the daycare and was crying and screaming).

[¶ 7] In outlining the reasons for her recommendation, the hearing officer stated that "Kane seemed well-intentioned, [but] appeared to be extremely rigid in her schedule and overextended with her work in addition to caring for the boys and for an infant for part of the time period at issue.... As to their personal care ... Kane repeatedly failed to respond in a timely fashion to the daycare center's attempts to contact her when the boys were ill, or refused to acknowledge such illness or seek medical care at times."

[¶ 8] The hearing officer also stated, "[a]dmittedly, there was also evidence that she did take them for medical treatment, but was handicapped because their medical records had not been obtained by the Dept. and also was informed on some visits by medical practitioners that the children

were not ill (e.g. no fever) and then came into additional conflict with the daycare center when she tried to return them to daycare." The hearing officer concluded that Kane did not provide adequate emotional care for the children by: (1) failing to respond to the daycare, DHHS, or GAL in a timely manner when they expressed concerns; (2) reacting negatively and defensively, and treating the boys roughly when concerns were raised; and (3) failing to evidence a sympathetic and caring attitude toward the boys when she interacted with them at the daycare center. The primary focus of the hearing officer's findings and conclusions was Kane's communications with other adults, not direct physical abuse or repeated incidents of neglect of children in Kane's care.

[¶ 9] Based on these findings and conclusions, the hearing officer recommended that the Commissioner affirm DHHS's substantiation of Kane. The Commissioner issued a final decision on December 19, 2006, adopting the hearing officer's findings of fact and accepting the recommendation.

[¶ 10] Kane then petitioned for review by the Superior Court pursuant to M.R. Civ. P. 80C. In Counts I and II, based on the same case history, Kane asserted independent causes of action pursuant to 42 U.S.C.S. § 1983 (2002) and the Fourteenth Amendment of the United States Constitution. Kane sought declaratory and injunctive relief requiring that DHHS adopt more specific substantiation policies and procedures and asked the Superior Court to vacate the decision of the hearing officer and remand the matter for a new hearing that satisfies the requirements of due process.

[¶ 11] DHHS moved to dismiss the independent claims pursuant to M.R. Civ. P. 12(b)(6), contending that Kane failed to state a claim because Kane had adequate

state law remedies to redress any constitutionally protected interests and because the claims were duplicative of Kane's Rule 80C appeal. In May 2007, the court dismissed Kane's independent claims with prejudice. In February 2008, the court affirmed the Commissioner's decision substantiating Kane for abuse and neglect. Kane filed this appeal.

## II. LEGAL ANALYSIS

### A. The Rule 80C Appeal

■ [¶ 12] When the Superior Court acts as an intermediate court of appeals, we review the agency's decision directly. *Wheaton v. Dep't of Health & Human Servs.*, 2008 ME 48, ¶ 5, 943 A.2d 568, 570. We will not disturb the decision "unless the agency abused its discretion, committed an error of law, or made factual findings not supported by substantial evidence in the record." *Id.* We review questions of statutory interpretation for errors of law. *Botting v. Dep't of Behavioral & Developmental Servs.*, 2003 ME 152, ¶ 9, 838 A.2d 1168, 1171. When interpreting a statute, we first examine its plain language, in an attempt to give effect to the legislative intent. *Id.* ¶ 10, 838 A.2d at 1171. In doing so, we consider the entire statutory scheme so that a harmonious result can be achieved. *Id.* We defer to an agency's interpretation of a statute it administers only when the meaning of the statute is unclear and is not within our expertise and only if the agency's interpretation is both reasonable and within the agency's expertise. *Id.* ¶ 9, 838 A.2d at 1171.

[¶ 13] Maine's Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099–C (2007), established the "out-of-home abuse and neglect investigating team" and authorized it to investigate reports of suspected abuse and neglect of children placed with those subject to licensure, such as foster parents in licensed family foster homes. 22 M.R.S. §§ 4088(2), 8101(3) (2007). Pursuant to 22 M.R.S. § 4088(3)(K), the investigating team has the responsibility and authority to determine whether allegations of out-of-home abuse or neglect have been "substantiated."

[¶ 14] In 2004, the Child and Family Services and Child Protection Act defined "abuse or neglect" as "a threat to a child's health or welfare by physical, mental or emotional injury or impairment, sexual abuse or exploitation, deprivation of essential needs or lack of protection from these, by a person responsible for the child." 22 M.R.S.A. § 4002(1) (2004). This definition of abuse and neglect was the governing standard for the substantiation proceeding instituted against Kane.

[¶ 15] In 2005, the DHHS Office of Child and Family Services published a policy manual that, in section IV. D–1, governs proceedings leading to a "substantiated" finding. The policy manual states that a "substantiated finding" is a finding that a caregiver "has caused and/or is likely to cause high severity child abuse and neglect." Me. Dep't of Health & Human Servs., Child and Family Servs. Policy Manual § IV. D–1 (Aug. 10, 2005). The policy manual also provides for a lesser "indicated" finding when there are signs of risk indicating that child abuse or neglect may be present. *Id.* The policy manual also directs that persons subject to substantiation proceedings must be advised that if a substantiated finding is made, it "will be entered into the Department's database and that it could affect their present and future employment." *Id.* The lesser "indicated" finding does not have similar employer notification consequences. *Id.*

[¶ 16] The policy manual definition of "abuse or neglect" that qualifies for a "substantiated" finding did not directly govern the 2004 events at issue here. However, it appears that the policy manual's procedural requirements were followed in the initial determination and Kane's administrative appeals.

[¶ 17] As is relevant to this case, Kane's substantiated finding had two results. First, it affected DHHS's decision as to whether Kane should continue as a licensed foster parent and should have other foster children committed to her care. That determination is not at issue here. Second, the substantiated finding resulted in Kane's name being entered into DHHS's database and made available in a way that could affect her present and future employment. This occurs because potential employers may discover a substantiated finding by contacting DHHS to learn if a potential employee who may have access to children is a person who has been "substantiated for abuse or neglect." *See* 22 M.R.S. §§ 4088(5), 7703(2)-(4) (2007).

[¶ 18] While the DHHS database is confidential, 22 M.R.S. § 4008(1) (2007), the confidentiality requirement has many exceptions, 22 M.R.S. § 4008(2)(3). Further, DHHS regulations governing facilities caring for children require that facility operators (1) disclose any employees who have been subject to substantiation investigations, and (2) obtain releases from employees permitting DHHS to obtain otherwise confidential information. *See* 18 C.M.R. 10 148 032–12 §§ 12.1.6.5, 12.1.7 (2008). At oral argument, the Court was advised that potential employers must obtain a release from a job applicant before DHHS will respond to an inquiry. Because of the requirement that employers disclose substantiation investigations of employees, reluctance to grant such a release would severely limit employment prospects in jobs involving access to children.

[¶ 19] Programs similar to the DHHS program, placing in databases available to potential employers names of individuals who have been "substantiated" or otherwise identified as potential child abusers based on investigative reports, but without a conviction or other adjudication, operate with varying degrees of procedural protections in other states. *See Humphries v. County of Los Angeles*, No. 05–56467, slip op. 15041, 2008 U.S.App. Lexis 23292 (9th Cir. Nov. 5, 2008); *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir.2005); *Smith v. Siegelman*, 322 F.3d 1290 (11th Cir.2003); *Valmonte v. Bane*, 18 F.3d 992 (2nd Cir.1994).

[¶ 20] To substantiate Kane for abuse or neglect in this case, DHHS must have found by a preponderance of the evidence that she acted, or failed to act, in a manner constituting a threat to the children's health or welfare by physical, mental or emotional injury or impairment, deprived the children of essential needs, or failed to protect the children from these harms. *See* 22 M.R.S.A. § 4002(1) (2004). We review the statutory language of section 4002(1) in the context of the entire statutory scheme to provide additional background for our interpretation of "abuse or neglect" for purposes of a substantiation finding. *See Botting*, 2003 ME 152, ¶ 10, 838 A.2d at 1171.

[¶ 21] In this analysis, it is useful to compare the definition of "abuse and neglect" in section 4002(1) with the definition applied to support a finding of jeopardy in proceedings to determine whether children should be removed from their parents' custody, or other action taken, pursuant to 22 M.R.S. § 4035. Pursuant to section 4035, a child may be removed from the parents' custody for significant periods of time if,

following a "jeopardy hearing," the court finds jeopardy to the child's health or welfare by a preponderance of the evidence. *Id.* §§ 4035–4036. "Jeopardy" is defined as "serious abuse or neglect." *Id.* § 4002(6). Pursuant to section 4002(6), "serious abuse and neglect" is evidenced by certain occurrences, including "serious harm or threat of serious harm";[2] deprivation of adequate food, clothing, shelter, supervision, care or education; deprivation of necessary healthcare "when the deprivation places the child in danger of serious harm"; and abandonment. The State, therefore, must meet a high standard in order to demonstrate that a child has suffered "serious abuse or neglect" such that the child's health or welfare is in jeopardy. The reason for this is apparent: the law imposes a high bar when the State seeks to interfere with a parent's fundamental right to parent his or her child. *See Rideout v. Riendeau*, 2000 ME 198, ¶¶ 18–20, 761 A.2d 291, 299–300.

[¶ 22] We do not equate the impact on a parent when the State removes a child from his or her custody with the impact on a foster parent when DHHS substantiates him or her for abuse or neglect. Courts do, and should, apply a higher standard when determining whether a parent's actions or inactions have placed a child's health or welfare in jeopardy, given the severe consequences that result from such a determination. Nonetheless, serious consequences also flow from a substantiation finding.

[¶ 23] Publication of Kane's name as a person substantiated for abuse or neglect will necessarily taint Kane's reputation.

In addition, and as indicated in the policy manual, such publication is likely to impair, or prevent completely, her ability to obtain employment or positions of responsibility that involve educating, caring for, supervising, or treating children. The stigma of being listed as "substantiated" for child abuse combined with the adverse professional and social consequences of being listed in the database implicates a fundamental liberty interest. *Humphries*, No. 05–56467, 547 F.3d at 1134, slip op. at 15070, 2008 U.S.App. Lexis 23292, at * 41 ("We hold that where a state statute creates both a stigma and a tangible burden on an individual's ability to obtain a right or status recognized by state law, an individual's liberty interest has been violated."); *see also Valmonte*, 18 F.3d at 1000 (concluding that inclusion on a list of child abusers attaches stigma and impedes an ability to find work, even though disclosure is not made to the public generally but only to authorized state agencies and potential employers in the child care field); *Williams v. Ragaglia*, 261 Conn. 219, 802 A.2d 778, 785–86, 788 (2002) (holding that a judgment revoking the appellant's special foster care license was not moot, even though she was later granted full custody of the foster children, because the judgment may have collateral consequences affecting her future ability to be a foster parent).

[¶ 24] Accordingly, the very high standard to be applied when a court makes a jeopardy determination based on the explicit description of what constitutes "serious abuse and neglect" provides context for understanding how to properly interpret "abuse and neglect" for purposes of a

---

2. "Serious harm" is defined in 22 M.R.S. § 4002(10) (2007) as:

    **A.** Serious injury;

    **B.** Serious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental,

behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior; or

    **C.** Sexual abuse or exploitation.

substantiation determination, although it may require a somewhat lesser finding of harm than in jeopardy determinations. Because life-altering consequences, almost as serious as those resulting from a finding of jeopardy, attend a substantiation of abuse or neglect, a substantiation finding must be based on an understanding that "abuse or neglect" means, for purposes of section 4088(3)(K), something more than imperfect, overly rigid, or even deficient parenting.

[¶ 25] DHHS appears to agree with this conclusion because in 2005, its policy manual added a heightened severity element to what is necessary to support a substantiated finding. Thus, the policy manual, in effect when Kane's hearing was held, specified that a "substantiated finding" is a finding that the parent or caregiver "has caused and/or is likely to cause *high severity* child abuse and neglect." Office of Child and Family Services, Child and Family Policy, § IV. D–1 (2005) (emphasis added). The policy manual definition was replaced, effective October 1, 2008, by a more detailed definition of "substantiated:"

> "Substantiated" means an administrative determination made by the Department of Health and Human Services that an individual or legal entity was the person responsible for a child who was subject to "abuse or neglect" where either (1) the abuse or neglect was of high severity or (2) the individual or legal entity poses a threat of harm to children for whom the individual or legal entity may become responsible through employment or volunteer activities.

18 C.M.R. 10 148 205–5 § V(L–1) (2008).

[¶ 26] These statements reflect DHHS's recognition that a substantiated finding has serious consequences for the person under investigation and that substantiating an allegation of "abuse or ne-

glect" therefore requires application of a heightened standard of proof as to what abuse or neglect will support a substantiated finding.

■ [¶ 27] Reviewing the hearing officer's findings of fact in this case, we conclude that they are not sufficient to support a finding of substantiated for abuse or neglect. Most of the findings indicate that Kane was sometimes difficult to contact and that she had a contentious relationship with the boys' DHHS caseworker, their guardian ad litem, and their childcare provider. A bad relationship with such individuals, while inappropriate for a foster parent, is not, without more, abuse or neglect of a child. The findings regarding Kane's relationship with the children also are insufficient to support a determination of abuse or neglect. Those findings indicate that, on a few occasions, the boys appeared at the daycare center cold and inadequately clothed. On other occasions, they may have attempted to eat other children's food at lunch. On a couple of occasions, Kane may have treated the children in a way that the daycare providers perceived as rough when she was trying to move them along, and on a few occasions, a child was left at the daycare center while having a fever.

[¶ 28] Each of these events reflects instances of what one could view as poor parenting. They are also events that have likely occurred in the lives of many good, hard-working parents in their interactions with daycare centers at a time when those parents are striving to accommodate the combined pressures of childrearing and working. Commonplace instances of poor parenting, when exhibited by a foster parent, do not support a finding of substantiated for abuse or neglect that carries with it such serious consequences. We therefore conclude that the events found by the hearing officer, after extensive testimony

and an extended investigation, are, even in combination, insufficient to demonstrate abuse or neglect as that term is defined in section 4002(1) and as understood within the entire statutory scheme.[3]

[¶ 29] Accordingly, the findings of the hearing officer, adopted by the Commissioner, are insufficient to support the determination that Kane has been substantiated for abuse or neglect of children. The Commissioner's substantiated determination must be vacated and the matter remanded for a determination that the evidence about the events in 2004 was insufficient to support the substantiated finding adopted by the Commissioner.

## B. The Independent Claims

■ [¶ 30] Though Kane sufficiently alleged a cognizable section 1983 cause of action,[4] that cause of action was duplicative of the claims Kane alleged in her Rule 80C administrative appeal. Rule 80C(i) of the Maine Rules of Civil Procedure provides in relevant part:

If a claim for review of governmental action under this rule is joined with a claim alleging an independent basis for relief from governmental action, the petition shall contain a separate count for each claim for relief asserted, setting forth the facts relied upon, the legal basis of the claim, and the relief requested.

[¶ 31] In *Adelman v. Town of Baldwin,* 2000 ME 91, ¶¶ 4–5, 750 A.2d 577, 580–81, we addressed the appeal of a local government decision to approve a conditional use permit, pursuant to M.R. Civ. P. 80B.[5] The plaintiff included an independent claim of bias, pursuant to 30-A M.R.S.A. § 2605 (1996), against the government body that approved the permit. *Id.* ¶ 6, 750 A.2d at 581. The Superior Court struck the independent claim as duplicative of the Rule 80B appeal. *Id.* ¶ 5, 750 A.2d at 581. We held that the Superior Court acted within the bounds of its discretion, reasoning, "[the plaintiff's] allegations of bias arose from the Planning Board's conduct concerning the issuance of the conditional use permit. These allegations are (and were) properly addressed in the Rule 80B appeal—not in an independent claim of bias, which would be duplicative of the Rule 80B appeal." *Id.* ¶ 7, 750 A.2d at 581.

---

3. The findings also do not meet the "high severity" standard adopted in DHHS's own policy manual, which, though not in effect at the time of the investigation of Kane's conduct, nonetheless respects the heightened standard necessary to support substantiation for abuse or neglect.

4. Title 42 U.S.C.S. § 1983 (2002) provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To formulate a cognizable section 1983 claim, a plaintiff must allege that the state deprived him or her of a protected liberty or property interest without due process of law. *See DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Servs.,* 2007 ME 62, ¶ 26, 922 A.2d 465, 473. Here, Kane alleged that the state deprived her of a protected liberty interest without due process. *See Valmonte v. Bane,* 18 F.3d 992, 999–1002 (2d Cir.1994) (holding that inclusion on a child abuser registry implicates a protected liberty interest in one's reputation and the ability to secure employment). Therefore, Kane alleged a cognizable section 1983 claim.

5. M.R. Civ. P. 80B(i) mirrors M.R. Civ. P. 80C(i); both allow joinder of "a claim alleging an independent basis for relief."

[¶ 32] Here, Kane relies on the same factual allegations, and seeks the same relief, for all three of her causes of action. The only allegation that Kane makes in support of her section 1983 claim that she does not also make in her Rule 80C appeal is that the lengthy delay in holding the administrative hearing violated her right to procedural due process. The court did not identify the reason for dismissing Kane's independent claims; however, because the court would have had to engage in the same analysis in addressing Kane's section 1983 claim arguments, with the exception of her delay argument,[6] as it engaged in when addressing the merits of Kane's Rule 80C arguments, the court did not abuse its discretion in dismissing Kane's independent claims as duplicative.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**6.** The court could have concluded that Kane's delay argument lacked merit, *see City of Los Angeles v. David*, 538 U.S. 715, 719, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003) (holding that a routine delay substantially required by administrative needs does not violate due process), or that Kane could have raised the argument within the context of her Rule 80C complaint, *see* 5 M.R.S. § 11007(4)(C)(3) (2007) (authorizing the court to reverse or modify an agency decision "[m]ade upon unlawful procedure").