MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 164
Docket:        And-18-50
Argued:        October 24, 2018
Decided:       December 18, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

JOHN DOE

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES

GORMAN, J.

[¶1] In April of 2017, the Department of Health and Human Services denied John Doe's request for a review of the Department's 2003 substantiation of him for sexual abuse of a minor. Doe now appeals from a judgment entered by the Superior Court (Androscoggin County, *MG Kennedy, J.*) that affirmed the Department's decision to deny Doe's request. Doe challenges the Department's denial as, *inter alia*, a violation of his procedural due process rights. Given the unique timing of the substantiation at issue here, we vacate the judgment of the Superior Court and remand for further proceedings.

## I. BACKGROUND

[¶2]  The parties do not dispute the following facts.

[¶3]  On October 1, 2003, the Department mailed a letter to Doe informing him that he had been substantiated for sexual abuse of a minor.[1] The letter explained the basis for the Department's substantiation finding and stated that Doe had the right "to request a review of the assessment record . . . in writing within thirty [] calendar days."  Doe acknowledges that he did not write the Department within thirty days after October 1, 2003, to request a review of his substantiation.

[¶4]  When the Department substantiated Doe in October of 2003, a "paper review"—established by a 2000 Department policy (the 2000 policy)—was the only appeal process available to an individual wishing to challenge a substantiation finding; there was no opportunity for any sort of hearing.  *See* Me. Dep't Health & Human Servs., *Review of Substantiation Decisions of Child Abuse and Neglect*, Child & Fam. Servs. Manual (2000) [hereinafter 2000 Policy].  The 2000 policy purportedly applied to "all official findings of child abuse or neglect [that were] substantiated on or after

---

[1]  The Department used the term "indicated" in its 2003 letter, but both parties agree that the use of that term in 2003 is synonymous—for the purposes of an appeal—with the present-day meaning of "substantiated."

February 1, 2000," and it set forth the process by which the Department attempted to comply with the Federal Child Abuse Prevention and Treatment Act (CAPTA).[2]  *Id.*  As the Department conceded at oral argument, it did not adopt the 2000 policy pursuant to the Maine Administrative Procedure Act (APA).  5 M.R.S. §§ 8001-11008 (2017); 22 M.R.S. § 42(1) (2017).

[¶5]  In November of 2003—a month after Doe received his substantiation letter—the Department adopted formal rules for substantiation appeals (the 2003 rules) pursuant to the APA's emergency rulemaking provision.[3]  *See* 5 M.R.S. § 8054 (2017); 22 M.R.S. § 42(1); 18 C.M.R. 10 148 201 § XI (effective Nov. 1, 2003).  The 2003 rules created the opportunity for a person whose substantiation was upheld after a paper review to request an administrative hearing in order to challenge the Department's substantiation finding.[4]  18 C.M.R. 10 148 201 §§ IV(E), V(B)

---

[2]  Originally enacted in 1974, CAPTA is the flagship piece of federal legislation addressing child abuse and neglect.  *See generally* Child Abuse Prevention and Treatment Act, Pub. L. No. 93-247, 88 Stat. 4 (codified as amended primarily in scattered sections of 42 U.S.C.A.).  The Act requires that a state provide substantiated individuals the opportunity to appeal their substantiations.  Me. Dep't Health & Human Servs., *Review of Substantiation Decisions of Child Abuse and Neglect*, Child & Fam. Servs. Manual (2000).

[3]  In 2004, the Department promulgated, unchanged, the 2003 rules pursuant to standard APA rulemaking procedures.  *See* 5 M.R.S. §§ 8052, 8053, 8056 (2017); 22 M.R.S. § 42(1); 18 C.M.R. 10 148 201 §§ I-XI (effective Feb. 3, 2004).

[4]  These changes to the Department's rules were spurred by the threat of litigation in the early 2000s from several advocacy groups that were concerned that the Department was infringing on individuals' due process rights.  *See* Me. Dep't Health & Human Servs., *Emergency Rules for the Appeal Procedures for Individuals Substantiated as Perpetrators of Abuse or Neglect of Children*, Basis

4

(effective Nov. 1, 2003). Despite the promulgation of the formal rules in November of 2003, the Department's 2000 policy was still in effect when Doe received his substantiation letter and thus it is that policy—and not the 2003 rules—that apply here. *See* 18 C.M.R. 10 148 201 § XI (effective Nov. 1, 2003).

[¶6] One day after the Department mailed Doe his substantiation letter, a Sagadahoc County grand jury handed down an indictment charging him with eight counts of gross sexual assault (Class A),[5] and eight counts of unlawful sexual contact (Class C).[6] In January of 2004, a jury convicted Doe on all sixteen counts; we upheld the conviction but, after Doe's successful post-conviction review and a subsequent retrial in 2009, a second jury acquitted Doe of all counts.

---

Statement (2003) ("Several legal advocacy groups have threatened to sue the Department for its failure to provide hearings for persons who have been substantiated for abuse or neglect. . . . The attached rules reflect an agreement between the Department and the groups, thus avoiding a lawsuit.").

[5] Of those eight, six counts were based on 17-A M.R.S.A. § 253(1)(B) (Supp. 2000), and two were based on 17-A M.R.S.A. § 253(1)(B) (Supp. 2002). Although there have been several amendments to 17-A M.R.S.A. § 253 since Doe's indictment, the amendments do not affect this matter. *See, e.g.*, P.L. 2017, ch. 300, §§ 1-3 (effective Nov. 1, 2017) (codified at 17-A M.R.S. § 253(1)(B) (2017)).

[6] Of those eight, six counts were based on 17-A M.R.S.A. § 255(1)(C) (Supp. 2000), and two were based on 17-A M.R.S.A. § 255-A(1)(E) (Supp. 2002). Although 17-A M.R.S.A. §255(1)(C) has been repealed and replaced, *see* P.L. 2001, ch. 383, §§ 22-23 (effective Jan. 31, 2003), and 17-A M.R.S.A. § 255-A(1)(E) has been amended several times, *see, e.g.*, P.L. 2015, ch. 509, § 2 (effective July 29, 2016) (codified at 17-A M.R.S. § 255-A(1)(E) (2017)), these changes do not affect this matter.

[¶7]  In 2008, while Doe's criminal case was unfolding, the Department promulgated yet another version of the substantiation-appeal rules.[7]  *See* 18 C.M.R. 10 148 201 §§ I-XIV (effective Oct. 1, 2008).  The 2008 rules created procedures by which an individual could retroactively request an administrative hearing to review his substantiation, but only if (1) he had been substantiated before November of 2003 and (2) he had timely requested a paper review.  *See* 18 C.M.R. 10 148 201 § XIV (effective Oct. 1, 2008).  There is no indication in the record that the Department notified any of the individuals substantiated before November of 2003 of the opportunity for a hearing.

[¶8]  In January of 2017, the Department notified Doe that, based on his 2003 substantiation, his presence in a home where children were residing could lead to the removal of those children.  On February 23, 2017, Doe requested a hearing to review his 2003 substantiation, and on April 21, 2017, the Department denied, as untimely, Doe's request:

> Mr. [Doe]'s request has been denied due to his failure to request a review in a timely manner following his receipt of his notice that the Department had made a finding against him.  It is clearly stated in Mr. [Doe]'s letter that if he wished to request a review, he needed to make that request in writing within thirty calendar

---

[7]  In 2008, the Department again complied with standard APA rulemaking procedures.  *See* 5 M.R.S. §§ 8052, 8053, 8056; 22 M.R.S. § 42(1).

days of the date he received the notice. Mr. [Doe] signed for the notice on October 4, 2003.

[¶9] Doe asked the Department to reconsider its denial. The Department refused, prompting Doe to petition the Superior Court (Androscoggin County) for a review of the Department's denial pursuant to Rule 80C of the Maine Rules of Civil Procedure. *See* M.R. Civ. P. 80C; 5 M.R.S. § 11002 (2017). The Superior Court affirmed the Department's decision. Doe timely appealed. *See* 5 M.R.S. § 11008(1) (2017); 14 M.R.S. 1851 (2017); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶10] Doe challenges the Department's denial of his request for a hearing to review his 2003 substantiation. Specifically, Doe asserts that the Department's 2000 policy is judicially unenforceable and that the Department's refusal to review his substantiation violated his procedural and substantive due process rights, as well as his equal protection rights.

[¶11] Generally, "[w]hen the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Manirakiza v. Dep't of Health & Human Servs.*, 2018 ME 10, ¶ 7, 177 A.3d 1264 (quotation marks

omitted).  Questions of law are subject to de novo review.  *York Hosp. v. Dep't of Health & Human Servs.*, 2008 ME 165, ¶ 32, 959 A.2d 67.  The party seeking to overturn the agency's decision bears the burden of persuasion on appeal.  *Somerset Cty. v. Dep't of Corr.*, 2016 ME 33, ¶ 14, 133 A.3d 1006.

A.    The Department's 2000 Policy

[¶12]    Doe first argues that the Department's 2000 policy is not judicially enforceable because it was not promulgated according to the APA, and therefore Doe's failure to request a paper review in 2003 cannot be used by the Department to bar his 2017 request for a review.  The APA provides that an agency rule "is not judicially enforceable unless it is adopted in a manner consistent with [the APA]."  5 M.R.S. § 8002(9) (2017).  There are certain procedures that an agency must follow when promulgating rules, such as, *inter alia*, providing public notice and submitting the proposed rules to the Attorney General for approval.  *See* 5 M.R.S. §§ 8052, 8053, 8056.  There are also APA requirements for emergency rulemaking.  *See* 5 M.R.S. § 8054.  "Rules adopted in a manner other than that prescribed by [the APA] are void and of no legal effect . . . ."  5 M.R.S. § 8057(1) (2017).

[¶13]    The Department's letter notifying Doe that he had been substantiated stated that Doe had "thirty calendar days" to appeal the

8

substantiation finding, but no such thirty-day appeal period is found in the Department's 2000 policy—the 2000 policy referenced an appeal period of only ten days. *See* 2000 Policy (explaining that the Department must include the following statement in all letters to substantiated individuals: "[y]ou must request this review in writing with [*sic*] TEN days of receiving this notice"). Even if the letter had correctly quoted the appeal period in the 2000 policy— ten days—*that* appeal period would be unenforceable because the 2000 policy was not promulgated pursuant to the APA. *See* 5 M.R.S. § 8057(1); 22 M.R.S. § 42(1). The thirty-day appeal period mentioned in the letter is unenforceable because the 2003 rules had not yet gone into effect. *See* 18 C.M.R. 10 148 201 § XI (effective Nov. 1, 2003). Because there is no judicially enforceable appeal period that relates to Doe's 2003 substantiation, Doe's failure to request a paper review in 2003 cannot act as a bar to his request for a review in 2017. The Department's refusal to review Doe's 2003 substantiation because he failed to "request a review in a timely manner" is thus misguided. *See* 5 M.R.S. § 8057(1).

B.     Procedural Due Process

[¶14] Doe also argues that the Department's refusal to review his 2003 substantiation violates his procedural due process rights pursuant to the

United States and Maine Constitutions.  *See* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A.  Specifically, Doe asserts that he was never provided an opportunity for a hearing before an impartial factfinder and that the Department's 2003 letter did not provide him with notice of the collateral consequences of his substantiation.

[¶15]  "No person shall be deprived of life, liberty or property without due process of law."  Me. Const. art. I, § 6-A; *see also* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law.").  In general, the fundamental requirement of due process is that a party must be given notice and an opportunity to be heard. *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 15, 728 A.2d 1268; *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 15, 723 A.2d 412.  "The notice and opportunity for a hearing must be granted at a meaningful time and in a meaningful manner."  *Kirkpatrick*, 1999 ME 73, ¶ 15, 728 A.2d 1268 (quotation marks omitted).

[¶16]  Following precedent from the United States Supreme Court, we examine questions of procedural due process in two steps.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Sparks v. Sparks*, 2013 ME 41, ¶ 28, 65 A.3d 1223.  "[W]e must first determine whether the governmental

action has resulted in a deprivation of life, liberty, or property. If a deprivation has occurred, we are next required to determine what process is due the individual under the Fourteenth Amendment." *Sparks*, 2013 ME 41, ¶ 28, 65 A.3d 1223 (quotation marks omitted) (citations omitted); *see also Thompson*, 490 U.S. at 460.

[¶17]  The Supreme Court has developed, and we have embraced, a balancing test that augments the second step of the due process analysis. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *Balian v. Bd. of Licensure in Med.*, 1999 ME 8, ¶ 10, 722 A.2d 364.  That test requires us to consider three distinct factors to determine "whether the administrative procedures provided [] are constitutionally sufficient" to protect an individual's due process rights:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334-35; *see also Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364.

[¶18]  Here, under the first step of the procedural due process analysis, Doe's liberty interest is at stake.  As we held in *Kane v. Commissioner of the*

*Department of Health & Human Services*, "serious consequences [] flow from a substantiation finding. . . . The stigma of being listed as 'substantiated' for child abuse combined with the adverse professional and social consequences of being listed in the database implicates a fundamental liberty interest." 2008 ME 185, ¶¶ 22-23, 960 A.2d 1196.

[¶19] Next, we must determine whether the administrative procedures available to Doe adequately protect his due process rights. *See Sparks*, 2013 ME 41, ¶ 28, 65 A.3d 1223. The Department's 2003 letter to Doe did several things: (1) it informed him that he had been substantiated; (2) it explained why he had been substantiated—i.e., what evidence the Department reviewed in making its substantiation determination; (3) it stated that he had the right to request a review of the substantiation determination; (4) it stated that he had thirty calendar days to request such a review; and (5) it informed him how to request a review. The letter, however, lacked two crucial pieces of information. First, it failed to provide Doe with any notice of the consequences of a substantiation finding.[8] Second, the letter—which reflected the Department's then-existing policy—did not permit the opportunity for a

---

[8] The Department's formal rules mandate that a substantiation letter contain notice of the collateral consequences of a substantiation finding. *See* 18 C.M.R. 10 148 201 § IV(B) (effective Nov. 1, 2003); 18 C.M.R. 10 148 201 § VII(B) (effective Oct. 1, 2008); 18 C.M.R. 10 148 201-5 § VII(B) (2017).

12

hearing if the Department upheld its substantiation finding after a paper review.

[¶20] Reviewing the Department's process as it applies to Doe pursuant to the three *Mathews* factors, it is clear that the Department did not have adequate predeprivation procedures with regard to Doe. *See Mathews*, 424 U.S. at 335; *Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364. First, the stigma and the adverse professional and social consequences of being listed in the database implicate a fundamental liberty interest. *See Kane*, 2008 ME 185, ¶ 23, 960 A.2d 1196.

[¶21] Second, under the 2000 policy, individuals substantiated by the Department were at a high risk of an erroneous deprivation of their liberty interests. *See Mathews*, 424 U.S. at 335; *Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364. The nature of this risk is demonstrated by the effect hearings had on substantiation decisions. Within the first two years after the Department implemented a hearing procedure for substantiation appeals, the Department reported that over half of the substantiation decisions that were appealed by a hearing were overturned. *See Littlefield v. Walsh*, CUMSC-CV-03-056 (Me. Super. Ct., Cum. Cty., Feb. 4, 2005) ("DHS, by its own admission, points up a substantial risk of erroneous deprivation when it

concedes that over half of the substantiation decisions appealed under the new procedures are overturned."). The fact that so many hearings resulted in reversals suggests that there was not only probable value, but *actual* value, in adding procedural safeguards—such as hearings—to the appeal process. *See Mathews*, 424 U.S. at 335; *Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364. Further, and most importantly, a hearing is a fundamental pillar of due process. *See Kirkpatrick*, 1999 ME 73, ¶ 15, 728 A.2d 1268.

[¶22]   Finally, under the third *Mathews* factor, the State has a substantial interest in maintaining an accurate list of perpetrators of child abuse; the "cost" associated with ensuring the accuracy of that list is relatively small. *See Mathews*, 424 U.S. at 335; *Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364. Because the Department already has in place procedures to conduct an administrative appellate review, *see* 18 C.M.R. 10 148 201-6 §§ VIII-XI (2017), making that process available to Doe would create only a slight administrative burden. Thus, all three *Mathews* factors, as applied to this case, weigh in favor of Doe and against the Department. *See Mathews*, 424 U.S. at 335; *Balian*, 1999 ME 8, ¶ 10, 722 A.2d 364.

[¶23] The Department argues that its 2008 rules are adequate and that they should apply to Doe. As mentioned earlier, the 2008 rules created a

14

process by which some individuals substantiated before November 2003 could request administrative hearings. *See* 18 C.M.R. 10 148 201 §§ XIV(B)(1)-(3) (effective Oct. 1, 2008). The Department asserts that these rules are "unambiguous" and that "[s]ubsection [four] describes exactly Mr. Doe's case." *See* 18 C.M.R. 10 148 201 § XIV(B)(4) (effective Oct. 1, 2008) ("If the substantiated person received a notice of the substantiation determination when it was made (or shortly thereafter), was notified of the opportunity to request a review of the substantiation, but failed to request a review, then the substantiated person is not entitled to any further review pursuant to these rules.").

[¶24] Regardless of whether the rules are unambiguous or describe Doe's case, they are unconstitutional as applied to Doe because they do not afford him due process. In 2003, Doe had no notice of the consequences of his substantiation because the Department's letter failed to include that notice. He did not become aware of these consequences until 2017, at which time he requested a hearing. The 2008 rules—retroactively affording some substantiated individuals an opportunity for a hearing—presuppose that the substantiated individual had notice of the consequences facing him.[9] Because

---

[9] There would be no due process violation if the Department had, after changing its appeal process in 2008, mailed a letter to Doe with: (1) notice of the consequences of his substantiation;

the Department failed to provide such notice to Doe, his procedural due process rights have been violated. *See Kirkpatrick*, 1999 ME 73, ¶ 15, 728 A.2d 1268 (explaining that "notice and opportunity for a hearing must be granted at a *meaningful* time and in a *meaningful* manner" (emphasis added) (quotation marks omitted)).

[¶25] In summary, the Department's 2000 policy is judicially unenforceable, the letter sent to Doe by the Department in October 2003 was constitutionally flawed, and the 2008 rules do not apply to Doe. The Department's denial of Doe's request as untimely violates Doe's procedural due process rights.[10]

The entry is:

> Judgment of the Superior Court vacated. Remanded with instructions to enter a judgment vacating the Department's decision and remanding to the Department for further proceedings consistent with this opinion, starting with a paper review of Doe's substantiation.

---

(2) an acknowledgment that there had been no process before November 1, 2003, available to appeal a paper review; and (3) notice that despite his "failure" to ask for a paper review in 2003, he now had a limited period of time to challenge his substantiation. Such a mailing would serve to notify other similarly situated individuals of the consequences of a substantiation and the limited opportunity for administrative appeals.

[10] Because we conclude that Doe is entitled to a review of his substantiation on this basis, we do not consider the merits of Doe's other contentions.

Joshua Klein-Golden, Esq. (orally), Clifford & Golden, PA, Lisbon Falls, for appellant John Doe

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Androscoggin County Superior Court docket number AP-2017-5
FOR CLERK REFERENCE ONLY