STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-21-41

JOHN DOE,                                  )
                                           )
          Petitioner,                      )
                                           )
     v.                                    )
                                           )     **ORDER ON 80C APPEAL**
                                           )
JEANNE LAMBREW, DEPARTMENT                  )
OF HEALTH AND HUMAN SERVICES               )
                                           )
          Respondent                       )
                                           )

Before the Court is Petitioner's Petition for Review of Final Agency Action pursuant to

M.R. Civ. P. 80C and Petitioner's Motion to Take Additional Evidence or Order the Taking of

Additional Evidence. Additionally, before the Court is an unopposed Motion to Correct the

Record by replacing fragments of recorded interviews with the entirety of those recorded

interviews. At the outset, the Court grants the Motion to Correct the Record. For the reasons

detailed below, and based on the corrected record, the Court denies the Petition and Motion to

Take Additional Evidence.

Background

Petitioner requests a reversal of the Department's decision, which affirmed a finding of

substantiation for sexual abuse of a child, or an order remanding the case for further proceedings.

Petitioner's motion requests an opportunity to cross-examine H.C., the alleged victim, either in

the Superior Court or on remand before the agency. In the alternative, Petitioner requests an

order striking H.C.'s out-of-court statements from the record or an order remanding the case for

1

a determination of whether cross-examination should be allowed. The parties agreed on an extended briefing schedule, which allowed Petitioner and the Department additional time to make their filings. The Petition and Motion to Take Additional Evidence have now been fully briefed.

*Decision of the Department*

The Department made the following findings of fact after a telephonic hearing, closing arguments, and a reopening for additional evidence and argument. Certified Record ("CR") at 2. Petitioner lived with his domestic partner and her 14-year-old daughter H.C. from June to December 2019. In early July 2019, Petitioner caused a threat to H.C.'s health or welfare by engaging in sexual abuse of H.C. CR at 4. Petitioner, while expressing acne pustules ("popping pimples") on H.C.'s back, shoulder, and chest, pulled down H.C.'s sports bra and touched her breasts with his hands for several minutes. CR at 4.

The Children's Advocacy Center ("CAC") conducted an interview of H.C. and her sister B.C. regarding H.C.'s allegations of sexual abuse against Petitioner. CR at 7-9. Petitioner was also interviewed. CR at 9. The Department's findings were largely based on the interview with H.C. and to some extent the interview with B.C.

The Department substantiated Petitioner for sexual abuse of a minor under 22 M.R.S. §§ 4001-4099-I, finding that Petitioner was responsible for H.C. and subjected her to high severity abuse or neglect. CR at 4. The Department noted that the terms "sexual abuse" and "high severity" are used in the Department's rules regarding procedures for the abuse or neglect substantiation process but are not defined therein. The Department refers to its Child and Family Services Policy, an internal policy that provides persuasive but nonbinding support for defining

2

these terms. That policy states that a substantiated finding of sexual abuse of a child is reached when a person responsible for the child "ha[s] physical contact with either a child's breasts, genitals, buttocks, or other body parts in a sexualized manner for sexual gratification." § IV.D-1. CR at 14. The Department found Petitioner, an adult household member and domestic partner of the parent, was "a person responsible for the child" under 22 M.R.S. § 4002(9) (defining "person responsible for the child" as "a person with responsibility for a child's health or welfare") and 10-148 C.M.R. ch. 201 § V(J)(1) (stating "a person responsible for the child" includes "any person who has responsibility to supervise and protect a child from harm"). CR at 15. It substantiated him for sexual abuse of H.C. based on his relationship to the child and the July 2019 incident H.C. reported in which he touched her breasts.

On the issue of hearsay, the Department considered hearsay evidence – notably the H.C. interview with CAC – under the requirements of 5 M.R.S. § 9057 and 10-148 C.M.R. ch. 1, § VII & § VII Note, which allow hearsay and explain that the reliability of hearsay evidence should be evaluated in making a decision. The Department cited factors to consider in weighing hearsay evidence, including the following: whether the hearsay is corroborated by live testimony or an admission, its source and potential motive for bias or to fabricate, and its level of detail. *Dowling v. Bangor Housing Auth.*, 2006 ME 136, ¶ 33, 910 A.2d 376. The Department found that there was no corroborating live testimony or admission but gave the evidence substantial weight because it found no motive for bias or fabrication and that the evidence was sufficiently detailed. CR at 16. The Department made these findings in reliance on the DHHS caseworker's testimony that reports of child sexual abuse are often delayed and that the CAC interviewer did not share any suspicion that H.C. was dishonest in the interviews, which is general practice when falsehood is suspected. It further supported its decision by articulating that, although the

3

Petitioner argued that H.C.'s stories had been inconsistent, H.C.'s allegations were substantially consistent "as between [H.C.'s and B.C.'s] forensic interviews and the initial report." CR at 18. Thus, the Department gave H.C.'s hearsay statements substantial weight and determined that the substantiation for sexual assault had been proven by a preponderance of the evidence. CR at 18.

Legal Standard

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court may not overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

Discussion

Petitioner argues that he was denied procedural due process when the Department admitted out-of-court statements of H.C. and relied on them in its decision. He also argues that the rule categorically denying cross-examination of minor alleged victims of abuse offends procedural due process.

4

Typically an offer of proof is required on a motion to take additional evidence, but Petitioner claims an offer of proof is not required here because cross-examination is inherently unpredictable. *See State v. Jutras*, 144 A.2d 865, 868-9 (Me. 1958). The Department argues that the motion should be denied because rather than submitting a separate "detailed statement," M.R. Civ. P. 80C(e), Petitioner listed what he suspected he could have elicited if allowed to cross-examine H.C. in his motion. The Court finds that Petitioner has provided enough to meet the procedural requirements.

Petitioner claims that the CAC interview of H.C. was unreliable for several reasons. First, he argues that the interviewer should have explored potential motives for H.C. to fabricate her report. Specifically, he highlights evidence that H.C. did not like Petitioner and believed his relationship with her mother was "toxic." As to motives for fabrication or bias, the Department found that H.C.'s distaste for Petitioner was unlikely to have driven H.C. to fabricate. The Department stated instead that H.C. might not have liked the Petitioner in part because he sexually abused her. The Court finds that the Department properly and reasonably weighed the interview evidence and that its reasoning is supported by substantial evidence in the record.

Petitioner also argues the interview was unreliable because the interviewer did not opine on whether he believed H.C. to be truthful. The Department found the interview credible, in part because the interviewer did not indicate otherwise. In its decision, the Department explained that it is typical for interviewers who suspect dishonesty to disclose their suspicion to the Department. Without such a tip, it is reasonable for the Department to find the H.C.'s interview credible. Moreover, the interview itself was entered as evidence in the record, and the hearing officer was able to independently assess H.C.'s interview. The Court therefore finds that the

Department did not err by finding the interview to be truthful and that the Department's finding was supported by substantial evidence in the record.

The crux of Petitioner's argument is that the Department's rule that minor alleged victims may not be subpoenaed violates due process because it denies the accused the ability to cross-examine the victim. Petitioner argues that he was denied due process because H.C. was never asked certain questions that may have weakened her report's probative value. He claims these omissions combined with his inability to cross-examine denied him a fair assessment of the allegations against him. For example, Petitioner contends that the interviewer should have followed up when H.C. mentioned that Petitioner had touched her breasts two or three other times in the past, should have asked why H.C. allowed Petitioner to pop her pimples although she reported that Petitioner had previously used that activity as an opportunity to touch her breasts, and should have inquired about the two occasions on which she denied that the July 2019 incident occurred.

The Department argues that there was no denial of due process here. It states that under the Department rules, "oral or written evidence of statements of any child are admissible without the testimony of the child" and the "hearing officer shall not draw any negative inference from a party's inability to cross-examine the child about the child's statements." 10-148 C.M.R. ch. 201, § XI(G)(2). The Department also cites to Law Court precedent stating that the right to cross-examination flowing from the Confrontation Clause of the Constitution does not apply in child protection proceedings. *In re E.A.*, 2015 ME 37, ¶¶ 13-4, 114 A.3d 207. By the same reasoning, it would likely not apply in this agency proceeding regarding child sexual abuse.

Petitioner cites to *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), containing a two-part test for violation of procedural due process. The Law Court has adopted the *Mathews* test. *Doe v.*

6

*HHS*, 2018 ME 164, 198 A.3d 782. First, a court determines "whether the governmental action has resulted in a deprivation of life, liberty, or property." *Doe*, 2018 ME 164, ¶ 16, 198 A.3d 782. The second step of the *Mathews* test illuminates "whether the administrative procedures available to Doe adequately protect his due process rights." *Doe*, 2018 ME 164, ¶ 19, 198 A.3d 782. The second step considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at ¶ 17 (citing *Mathews*, 424 U.S. at 334-5).

In *Doe*,[1] the Law Court found a deprivation of liberty without due process when an individual was substantiated for child abuse without being informed of the consequences or being offered the opportunity for a hearing. 2018 ME 164, ¶¶ 21-4, 198 A.3d 782. The Law Court found a deprivation of liberty had occurred because "'serious consequences [] flow from a substantiation finding. . . . The stigma of being listed as substantiated for child abuse combined with the adverse professional and social consequences of being listed in the database implicates a fundamental liberty interest.'" *Kane v. Commissioner, DHHS*, 2008 ME 185, ¶¶ 22-23, 960 A.2d 1196. After considering the *Mathews* factors, the Law Court found that the Department's actions had violated procedural due process.

---

[1] Although the case before the Court shares the same name as the case referenced, "*Doe*" as used in this Order refers to 2018 ME 164, 198 A.3d 782.

In the case before this Court, Petitioner has been deprived of liberty due to his substantiation for child abuse; however, unlike in *Doe*, Petitioner was afforded a hearing before the agency. The first and third *Mathews* factors - private interest and government interest - mirror those in *Doe*: The Petitioner has an interest in his liberty, which is impacted by the social and professional consequences of an abuse substantiation, and the government has an interest in maintaining a database of perpetrators of child abuse. *Doe*, 2018 ME 164, ¶¶ 19-22, 198 A.3d 782. The administrative cost of conducting cross-examination would be minimal, but here the government agency has also demonstrated interest in protecting minor children from the emotional trauma resulting from being cross-examined by an abuser.

On the other hand, the risk of erroneous deprivation of liberty in this case is small because Petitioner had fair notice of the substantiation and had the opportunity to be heard. *See Doe*, 2018 ME 164, ¶ 17, 198 A.3d 782 ("In general, the fundamental requirement of due process is that a party must be given notice and an opportunity to be heard." (citing *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 15, 728 A.2d 1268)). Petitioner had the right to testify and the right to submit closing arguments detailing his complaints about the evidence. After weighing these three factors, the Court finds that the agency's actions adequately protected his due process rights.

Conclusion

Having found no violation of due process, the Court affirms the Department's decision substantiating Petitioner for child abuse.

The entry shall be:

8

The Motion to Correct the Record is GRANTED. The Motion to Take Additional Evidence and the Petition for Review are DENIED.

Date: ___5 | 4 | 22___        _____

**Justice, Superior Court**