STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER DOCKET
DOCKET NO. BCD-AP-20-02

DELBERT A. REED,

          Petitioner

    v.

MATTHEW DUNLAP, in his capacity of
Secretary of State for the State of Maine,

          Respondent

    and

MAINERS FOR LOCAL POWER PAC,
NextEra ENERGY RESOURCES, LLC,
INDUSTRIAL ENERGY CONSUMER
GROUP, and MAINE STATE CHAMBER
OF COMMERCE

          Intervenors

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON APPEAL OF AMENDED
DETERMINATION BY SECRETARY
OF STATE re CITIZEN INITIATIVE
(Rule 80C M.R.C.P.)**

Before the Court is Delbert Reed's ("Mr. Reed's") Petition for review of final agency action pursuant to Rule 80C of the Maine Rules of Civil Procedure. Mr. Reed petitions the Court to reverse Respondent Secretary of State's Amended Determination of the validity of petitions supporting the Citizen Initiative entitled "Resolve, To Reject the New England Clean Energy Connect Transmission Project" ("the Petition"). Mr. Reed asserts the Secretary: 1) erred as a matter of law or otherwise abused his discretion when he validated petition signatures on petition forms notarized by specific notaries; 2) abused his discretion when he declined to conduct further investigations into Mr. Reed's allegations of fraud;  3) erred as a matter of law or otherwise abused his discretion when he determined he lacked authority to conduct evidentiary hearings after

1

remand; and 4) abused his discretion when he failed to invalidate additional signatures after remand for other reasons.

At the outset, the Court would note what issues are not before the Court. First, the parties strenuously disagree as to whether the people of Maine pursuant to the Maine Constitution have the right through this Citizen's Initiative to reject this project, but they do agree that issue would not be ripe unless the measure is placed on the ballot and approved by Maine voters. Second, the Court is not asked here, nor could it be, to decide if the Initiative is good policy. And finally, the Court would note that federal law has very little to do with the task before the Court, which is to decide whether the Maine Constitution, Maine statutes and Supreme Judicial Court precedent requires that this measure go to the voters of Maine in November of 2020.

Petitioner is represented by Attorneys Nolan Reichl, Jared DesRosiers, Newell Augur, Joshua Tardy, and Joshua Randlett. Respondent Secretary of State is represented by Attorney Aaron Frey and Assistant Attorney General Phyllis Gardiner. Intervenor Mainers for Local Power (MLP) is represented by Attorneys David Kallin, Adam Cote and Amy Olfene. Intervenor NextEra Energy Resources, LLC (NER) is represented by Attorney Christopher Roach. Intervenor Industrial Energy Consumer Group (IECG) is represented by Attorneys Anthony Buxton, Sigmund Schutz, and Robert Borowski. Intervenor Maine State Chamber of Commerce (MSCC) is represented by Attorney Gerald Petruccelli.

Intervenors MLP and NER support the Secretary of State's Amended Determination issued on April 1, 2020. Intervenors IECG and MSCC support Mr. Reed's appeal.

**BACKGROUND**

On February 3, 2020, a total of 15,875 petition forms containing 82,449 signatures in support of the Citizen Initiative were filed with the Secretary. Upon receiving the written petition, the Secretary was required by statute to issue a Determination of the Petition's validity within thirty (30) days thereafter, by March 4, 2020. 21-A M.R.S. § 905(1). In response to the Petition submission, Clean Energy Matters ("CEM"), an organization opposed to the citizen initiative, submitted letters with a number of attached documents to the Secretary on February 24 and 27, 2020. Among CEM's submissions were allegations that eight specific notaries had provided services other than administering oaths to circulators in support of the petition drive and in violation of Maine law.[1]

Given the Secretary's statutory deadline to determine the Petition's validity, he asserted in the initial Determination that he lacked the opportunity to investigate all of the allegations contained in CEM's submissions, and specifically, was unable to investigate the specified notaries' activities, or to make findings concerning the validity of their notarial acts. No party in this case has directly questioned whether the Secretary had time to conduct such an investigation prior to remand, perhaps because of the date when Petitioner provided the information to the Secretary.[2] The Secretary found that a total of 69,714 signatures on the petitions were valid, 6,647 more than required for the Petition to qualify for the ballot.

---

[1] 21-A M.R.S. § 903-E provides that a notary public "is not authorized to administer an oath or affirmation to the circulator of a petition under section 902 if the notary public … is … providing any other services, regardless of compensation, to initiate the direct initiative … for which the petition is being circulated … or … providing services other than notarial acts, regardless of compensation, to promote the direct initiative … for which the petition is being circulated."

[2] The deadline for the Secretary to issue his Determination was March 4, 2020. The documents from Mr. Reed's counsel were received by the Secretary on February 24 and 27, 2020, although it appears that Petitioner's counsel received the information from his Private Investigator no later than January 28, 2020. Pet. For Judicial Review, Exh. B.

Thereafter, Mr. Reed filed a Rule 80C petition for judicial review of that Determination on March 13, 2020, in accordance with 21-A M.R.S. § 905(2). Shortly thereafter, on March 20, 2020 Mr. Reed filed a motion to take additional evidence with this Court. In response to Mr. Reed's motion, the Court issued an order on March 23, 2020, remanding this matter to the Secretary for the purpose of taking additional evidence pursuant to 5 M.R.S. § 11006(1)(B). Accordingly, the Secretary issued an Amended Determination on April 1, 2020.[3]

The Amended Determination detailed the process used by the Secretary to take additional evidence along with the Secretary's findings. According to the Amended Determination, the Secretary sent letters to each of the notaries in question, asking them to submit a signed (and sworn, if possible) statement explaining the details of their engagement and involvement with the petition drive. The notaries were also asked to produce documents, including copies of their notary logs, any agreement to provide services for the petition drive, paystubs or cancelled checks reflecting compensation for their services, and any instructions provided by the entity that hired them. All notaries complied with the Secretary's investigation. As a result, the Secretary validated petitions certified by four of the notaries. However, according to the Amended Determination, five other notaries either engaged (at some point) in other services relating to the initiative, or otherwise erred

[3] Respondent MLP has argued throughout these proceedings that *Webster v. Dunlap*, AP-09-55 (Me. Sup. Ct., Dec. 21, 2009) makes any post-remand investigation by the Secretary an "ad hoc" investigation not authorized under Maine law. The Court disagrees. In *Webster,* the Secretary failed to issue *any* Determination within the 30 days required by law, and the Superior Court concluded that the Secretary therefore lost authority to take any action after that failure. In this case, the Secretary made an initial Determination which the Court found was subject to judicial review. The Court permitted the parties to brief the issue of whether the matter should be sent back for further investigation and due to the nature of the allegations, and because the Secretary had very little time to investigate late-made allegations by Petitioner and some Intervenors in the first instance, this case was remanded to the Secretary to conduct the investigation that resulted in the Amended Determination.

4

in their notarial duties. Therefore, the Secretary called these notaries' authority to administer oaths to circulators of the petitions into question.

The first notary whose notarial acts were called into question by the Secretary was David McGovern, Sr. who, according to the Secretary, circulated petitions during the first week of January 2020, and then volunteered to, and did, notarize petitions for other circulators. The Secretary found this behavior in violation of 21-A M.R.S. § 903-E, and rejected the petitions submitted by this circulator. As detailed in the Amended Determination, a second notary named Michael Underhill also circulated petitions on two occasions in December 2019, after which he notarized the petitions of another circulator. As with the signatures notarized by Mr. McGovern, the Secretary rejected the signatures notarized by Mr. Underhill.

The Secretary also questioned a third notary, Wesley Huckey, who is described in the Amended Determination as an employee in the City Clerk's office in Augusta who was hired to notarize petitions for circulators in January 2020. The Secretary found that Mr. Huckey was hired only as a notary and did not otherwise work on the initiative. However, the Secretary noted that on one occasion, Mr. Huckey carried a batch of petitions that his colleagues in the city of Augusta's clerk's office had just finished certifying to the campaign field office, where he was headed that evening to notarize petitions. The Secretary found that this action was, at most, a *de minimis* violation of section 903-E and therefore found that petitions notarized by Mr. Huckey were valid. If the petitions notarized by Mr. Huckey after January 17, 2020 when he carried the boxes to the field office were considered invalid by the Secretary, an additional 2,555 signatures would have been rejected.

The fourth notary described in the Amended Determination, Leah Flumerfelt, was initially hired by the campaign to circulate petitions, but was hired to notarize petitions instead when the

5

campaign learned she was a notary public. According to the Amended Determination, Ms. Flumerfelt administered oaths to circulators between January 12 and January 24, 2020. Then, on January 24 Ms. Flumerfelt was asked to deliver petitions to several town offices, organize petitions in the office, and to clean the office. The Secretary found that because Ms. Flumerfelt did not engage in any of these actions until after she had finished administering oaths to circulators, the oaths administered before she performed other services remained valid.

According to the Secretary, the final notary questioned, Brittany Skidmore, engaged in similar conduct to Ms. Flumerfelt. Ms. Skidmore reviewed certain petitions for errors on the weekend of January 27-30, 2020 after having administered oaths to circulators from December 17, 2019 to January 24, 2020. The Secretary found that there was no evidence Ms. Skidmore performed any non-notarial services for the initiative prior to the last week in January, after she had already finished her notarial duties. However, the Secretary found that Ms. Skidmore made other errors while acting as a notary prior to January 1, 2020, including failing to read oaths to circulators at correct times, and failing to ask for circulators identification. The Secretary noted that another campaign employee instructed Ms. Skidmore that she was required to read the oath to each circulator, watch the circulator sign his or her name to the oath, and then sign her name as notary in the circulator's presence- in accordance with 21-A M.R.S. § 902. The Secretary found that from that point on, Ms. Skidmore followed these practices. Accordingly, as detailed in the Amended Determination, the Secretary found the petitions notarized by Ms. Skidmore prior to January 2, 2020 invalid, but found the remaining signatures valid despite the other services she eventually provided to the campaign after completion of her notarial duties.

In addition to the notaries, the Secretary investigated allegations of fraud with regard to a specific petition circulator, Megan St. Peter. According to the Secretary's Amended

6

Determination, said circulator submitted petition #743 (Bate stamped PET0001485), which included two signatures from individuals who attest they did not sign the petition. The Secretary had previously rejected both signatures. On remand the Secretary found that almost all signatures on petition #743 were appropriately rejected for various reasons. Therefore, the Secretary was persuaded that Ms. St. Peter's oath could not be relied upon, resulting in the rejection of 174 more signatures previously considered valid.

Finally, the Secretary reviewed all 15,785 petitions for errors intrinsic to the petitions, such as duplicate signatures, and issues with voter registration status. At the conclusion of the Secretary's review, he found in his Amended Determination that a total of 16,332 signatures were invalid, and 66,117 were valid, meaning that the overall number exceeded the constitutional minimum by 3,050 signatures. As a result of the Secretary's Amended Determination, Mr. Reed filed a second motion to take additional evidence on April 2, 2020, which the Court denied. Mr. Reed now challenges the Secretary's Amended Determination on the merits.

**STANDARD OF REVIEW**

The Maine Constitution grants Maine people the right to legislate by Direct Initiative. ME. CONST. art IV, pt. 3, § 18. The Constitution provides that the "direct initiative. . . shall be governed by the provisions of this Constitution and of the general law, supplemented by such reasonable action as may be necessary to render the preceding sections self executing." Me. Const. art. IV, pt. 3, § 22. The Law Court has "stressed the importance of this Constitutional power reserved to the people, declaring it to be an 'absolute right.'" *McGee v. Sec'y of State*, 2006 ME 50, ¶ 21, 896 A.2d 933. Such a right cannot be abridged either directly or indirectly by any action of the Legislature. *Id. (*citing *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 231, 60 A.2d 908, 911

7

(1948)). The Legislature may enact laws "not inconsistent with the constitution for applying the. . . direct initiative" and "to establish procedures for determination of the validity of written petitions." Me. Const. art IV, pt. 3, § 22. Laws enacted to govern the direct initiative process "must be liberally construed to facilitate, rather than handicap, the people's exercise of their sovereign power to legislate." *Allen v. Quinn,* 459 A.2d 1098, 1102-03 (Me. 1983). Courts apply strict scrutiny when reviewing statutes that aim to regulate the ballot initiative process to ensure they do not unduly burden Maine people's rights. Thus, any State action must be narrowly tailored to serve a compelling state interest. *Me. Taxpayers Action Network v. Sec'y of State*, 2002 ME 64, ¶ 8, 795 A.2d 75.

Under the Maine Constitution, the Secretary of State is the constitutional officer who has been granted plenary power to "investigate and determine the validity of petitions." *Id.* ¶ 12, n. 8 (citing *Opinion of the Justices,* 116 Me. 557, 580-82, 103 A. 761, 771-72 (1917)). When reviewing the Secretary of State's Determination of initiative petitions, the Court's review must be deferential and limited, and the Law Court has recognized that the Secretary has a broad mandate when it comes to Citizen Initiatives, noting that the Secretary has more discretion under Section 905 than in reviews of nomination petitions under 21-A M.R.S. § 354. *See Knutson v. Dep't of Sec'y of State,* 2008 ME 124, ¶ 20 & n.7, 954 A.2d 1054, 1060.

Generally, an action brought seeking review of the Determination of the Secretary of State on Direct Initiative Petitions "must be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section." 21-A M.R.S. § 905(2). In *Palesky v. Sec'y of State,* the Law Court interpreted the modifications presented in section 905 to expedite the timing of an appeal. 1998 ME 103, ¶ 5, 711 A.2d 129. Section 905 does not require "a full de novo trial." *Id.* ¶ 6.

Pursuant to M.R. Civ. P. 80C, when the Superior Court acts in its intermediate appellate capacity, it must review an agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Doe v. Dep't of Health and Human Services,* 2018 ME 164, ¶ 11, 198 A.3d 782. The Court will not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record. *Kroeger v. Dep't of Envtl. Prot.,* 2005 ME 50, ¶ 7, 870 A.2d 566. Questions of law are subject to de novo review. *Id (*citing *York Hosp. v. Dep't of Health & Human Servs.,* 2008 ME 165, ¶ 32, 959 A.2d 67).

When reviewing an agency's interpretation of a statute administered by it, the Court must first determine if the statute is ambiguous. *Street v. Bd. of Licensing of Auctioneers*, 2006 ME 6, ¶ 9, 889 A.2d 319 (citing *Competitive Energy Servs., LLC v. PUC,* 2003 ME 12, ¶ 15, 818 A.2d 1039). If the statute is unambiguous the Court construes the statute plainly, without deference to the agency's construction. *Id.* However, the agency's interpretation of an ambiguous statute it administers is reviewed with great deference and will be upheld unless the statute plainly compels a contrary result. *Id.* The party seeking to overturn an agency's decision bears the burden of persuasion on appeal. *Doe,* 2018 ME 164, ¶ 11, 198 A.3d 782.

If the agency makes a decision committed to its reasonable discretion, the party appealing has the burden of demonstrating that the agency decision-maker abused his or her discretion in reaching the decision. The Court may find an abuse of discretion if the petitioner demonstrates that the Secretary exceeded the bounds of reasonable choices available to him or her, considering the facts and circumstances of the particular case and the governing law. *Forest Ecology Network v. Land Use Regulation Comm'n,* 2012 ME 36, ¶ 28, 39 A.3d 74. When reviewing an agency's factual

9

findings, the Court will examine the entire record to determine whether it could fairly and reasonably find the facts as it did, even if the record contains other inconsistent or contrary evidence. *Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 11, 69 A.3d 413. Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. Of Examiners of Psychologists,* 2000 ME 206, ¶ 9, 762 A.2d 551.

Importantly, in the context of a Citizen's Initiative, if a statute can be interpreted in multiple ways, the Court must interpret the statute in a way that does not raise constitutional problems. *McGee v. Sec'y of State*, 2006 ME 50, ¶ 18, 896 A.2d 933. And finally, "Where there is doubt as to the meaning of legislation regulating the reserved right of initiative, that doubt is to be resolved in favor of the people's exercise of the right." *Id*, ¶ 18.

**1. Whether the Secretary Erred or Abused his Discretion When He Determined that Wesley Ryan Huckey, Leah Flumerfelt, and Brittany Skidmore Were Authorized to Administer Oaths to Petition Circulators.**

Petitioner Reed and Intervenors IECG and MSCC argue that the Secretary committed an error of law when he validated signatures notarized by the three individuals named above. Specifically, Mr. Reed argues that because the Secretary found that all three of these individuals performed non-notarial services at some point in time for the signature gathering campaign, he was required by law to invalidate any signature on any petition of any circulator who took an oath administered by them. He asserts that these three individuals were not "authorized by law to administer oaths" to the circulators who gathered signatures in support of the direct initiative campaign under a new law enacted by the Maine Legislature in 2016.

The Constitution of Maine requires that "[t]he oath of the circulator must be sworn to in the presence of a person authorized by law to administer oaths." Me. Const. Art. IV, Pt. 3, § 20.

Pursuant to Maine Law, notaries public are, as a general matter, authorized to administer oaths to circulators. 21-A M.R.S. § 902 (stating that a "circulator of a petition must sign the petition and verify by oath or affirmation before a notary public or other person authorized by law to administer oaths or affirmations . . . ."); 4 M.R.S. § 951 (stating "when authorized by the laws of this State . . . to do any official act, [a] notary public may administer any oath necessary to the completion or validity of the act").

Maine Law, however, restricts the authority of a notary to administer an oath or affirmation in 21-A M.R.S § 903-E as follows:

> A notary public . . . authorized by law to administer oaths or affirmations generally is not authorized to administer an oath or affirmation to the circulator of a petition under section 902 if the notary public . . . is:
>
> > **A**. Providing any other services, regardless of compensation, to initiate the direct initiative or people's veto referendum for which the petition is being circulated. For the purposes of this paragraph, "initiate" has the same meaning as section 1052, subsection 4-B; or
> >
> > **B**. Providing services other than notarial acts, regardless of compensation, to promote the direct initiative or people's veto referendum for which the petition is being circulated.

21-A M.R.S § 903-E.

> In a different section, the law governing notaries public states:
>
> It is a conflict of interest for a notary public to administer an oath or affirmation to a circulator of a petition for a direct initiative or people's veto referendum under Title 21-A, section 902 if the notary public also provides services that are not notarial acts to initiate or promote that direct initiative or people's veto referendum. This section does not affect or apply to notarial acts performed before August 4, 1988.

4 M.R.S. § 954-A.

The purpose of the language of Section 903-E is to regulate which notaries have the authority to administer an oath or affirmation to circulators. Whether such authority exists is

11

dependent upon whether the notary "is providing services other than notarial acts" "to initiate the direct initiative" or "to promote the direct initiative." The purpose of section 954-A is to expand the categories of conduct which create a conflict of interest to include one who administers an oath or affirmation in a citizen's initiative if the notary also "provides" services that are not notarial acts to initiate or promote such an initiative. The Section does not directly address the effect of the conflict in terms of authority.

As the parties point out, no Court has had occasion to interpret these statutes. However, it is clear that one section (903-E) speaks in terms of the "authority" of the notary, while the other (954-A) speaks in terms of the ethical obligations of the notary. This distinction in the Court's view is significant, because what is at issue in this case is the legal authority of a notary to administer the oath, as opposed to what professional consequences might flow toward a notary acting with a conflict of interest. Because of this important distinction, the Court limits its analysis to Section 903-E.

The Secretary apparently concluded, and there is a basis in the law for him to have done so, that the authority to administer an oath, however, either exists or does not exist at the time the oath was sworn. That is, in order to determine whether an individual is authorized to administer an oath, one must look at the point in time at which the oath was administered. *See United States v. Curtis*, 107 U.S. 671, 673 (1882) (stating "the underlying question is whether the notary public . . . was, at the respective dates of the oaths taken by Curtis, authorized by the laws of the United States to administer such oaths"). The Court finds that the Legislature, in enacting Sections 903-E, directs the Secretary, as the Constitutional Officer tasked with reviewing initiative petitions, to determine whether, at the time the oath is administered, the notary "is providing services other than notarial acts" to either initiate or promote the direct initiative. And the Court concludes this

12

is the approach taken by the Secretary in this case, not just for the notaries targeted by Petitioners – Huckey, Flumerfelt and Skidmore – but others as well.

Here, the Secretary determined on remand that at the time they administered the oath to circulators, two notaries—David McGovern, Sr and Michael Underhill—were also circulating petitions for the initiative. Consequently, the Secretary correctly determined that these notaries were not authorized to administer oaths to circulators. The Secretary also determined that three additional notaries—at some point - provided non-notarial services to the initiative. These notaries are Leah Flumerfelt, Brittany Skidmore[4] and Wesley Huckey. The Secretary made specific findings with respect to each of these notaries and ultimately determined at the time they administered the oaths to circulators, they had the authority to do so.

First, with respect to Ms. Flumerfelt and Ms. Skidmore, the Secretary found that because neither Ms. Flumerfelt nor Ms. Skidmore were providing non-notarial services at the time they administered oaths to circulators, they were authorized to administer those oaths. Mr. Reed and his supporting Intervenors vehemently disagree with this interpretation of sections 903-E by the Secretary. They assert that this new law unambiguously denies notaries the authority to notarize petitions if the notaries, at any time, perform any non-notarial act to initiate or promote the campaign.

This interpretation, however, ignores the plain language of the statute, and the Law Court in *McGee* directs this Court to focus its analysis there. *McGee,* 2006 ME 50, ¶ 12. The Court agrees

_____

[4] As noted, the Secretary found that after completing her last act as notary on January 24, 2020 Ms. Flumerfelt delivered petitions to seven town halls and performed some cleaning work. Similarly, after Ms. Skidmore completed her last act as notary on that same date, she spent some time checking over petitions and helped fill in a circulator's name on the petitions. The Secretary did invalidate some signatures on petitions notarized by Ms. Skidmore after determining that for petitions prior to January 1, 2020 she made certain errors in procedure, including neglecting to ask circulators for identification, and neglecting to administer the oath at the correct time. After these errors were corrected by the campaign, the Secretary found that she followed the correct procedures.

with the Secretary and his supporting Intervenors that Section 903-E expresses the prohibition in the Section in the present tense. The language "is providing any other services" is the express language in Sections 903-E and no language in the Section is directed to any future act of the notary. The Court concludes that the Secretary's interpretations of this Section was reasonable, and agrees with the Attorney General that "his application of that statute to factual circumstances pertaining to each notary is supported by substantial evidence." (Resp.'s Opp. Mem. at 5).

Petitioner's interpretation would also mean that a notary's authority was *dependent upon* a future act. That is, if at the time an oath is administered, a notary has not yet performed any non-notarial services in support of the campaign, the oath would be valid at that point in time, and the Petitioners do not seem to argue otherwise. However, according to Petitioner's interpretation of Section 903-E, the Secretary is required to retroactively reach back in time to revoke the authority to administer what was, at the time it was given, a lawfully administered oath. More importantly, if the authority to administer the oath exists at the time the oath is administered - and the oath is sworn to by the circulator – Petitioner's interpretation of these sections would nullify not just the notarial action, but the oath taken by the circulator. An oath duly sworn would be unsworn. Nowhere in these Sections does the Legislature directly express an intention to nullify the oath of the circulator, and this interpretation by the Petitioners would run roughshod over the constitutional rights of the circulator who has no control over the future actions of the notary. The Law Court has referred to the circulator's role as "pivotal" and even more significantly, has determined that the circulation of initiative petitions by them is "core political speech." *Maine Taxpayers Network,* 2002 ME 64, ¶¶ 8, 13.

14

Mr. Reed also argues that even if the Secretary's interpretation of the law is correct, the Secretary still committed error when he concluded that Flumerfelt and Huckey had the authority to administer Oaths to circulators.

In regard to Ms. Flumerfelt, Mr. Reed stresses that there can be no question that her "allegiance" is in support of the campaign. Even if it is true that Ms. Flumerfelt believes in the merits of the initiative proposal, nothing in the section 903-E suggest her personal viewpoint has any bearing on the question of whether she possesses lawful authority to administer oaths to circulators. This argument is also puzzling given the position taken by Mr. Reed in his Reply brief where he cautions against requiring the Secretary of State to engage in an "impractical inquiry into a notary's mental state." (Pet'r's Reply at 3.)

Mr. Reed further points out that Ms. Flumerfelt was originally hired to perform work as a circulator and argues that this constitutes a service in support of the campaign, thereby making her actions as a notary entirely unlawful. The Court finds this argument to be unpersuasive. In Mr. Reed's view, Ms. Flumerfelt provided a service to support the campaign the moment she arrived at work expecting that she would perform work as a circulator, even if she never acted as a circulator. The argument seeks to untether the act of reporting for work from the services that are actually performed at work, and there is simply no evidence in the record to support Mr. Reed's assertion that she ever acted as a circulator. Finally, if it were true that arriving at the campaign headquarters constituted a non-notarial service in support of the campaign then all notaries could, by their mere presence at a campaign office, be said to be performing non-notarial services in support of the campaign.

Turning to Mr. Huckey, Mr. Reed argues that the Secretary correctly determined that Mr. Huckey provided a non-notarial service to the initiative campaign but incorrectly failed to exclude

the signatures notarized by Mr. Huckey. It is true that the Secretary in his Amended Determination concluded that Mr. Huckey's single instance of delivering petitions to the campaign headquarters "could be construed as performing other services in violation of section 903-E." (Sec'y's Am. Det. at 4(G)). The Secretary, however, found that this "did not disqualify Mr. Huckey from administering oaths to circulators" because it reflected at most only a "*de minimis* violation." *Id.* In his opposing memorandum, the Secretary further acknowledges that Mr. Huckey's services as a courier are "technically a non-notarial act related to 'initiating' a petition" but that this act fits the "classic definition of a *de minimis* violation." (Resp.'s Opp. Mem. at 9.)

The Court concludes that the Secretary did not commit error when he found that this one instance of delivering petitions did not disqualify Mr. Huckey from acting as a notary. The Law Court has stated in no uncertain terms that "the right of the people to initiate and seek to enact legislation is an absolute right." *McGee v. Sec'y of State*, 2006 ME 50, ¶ 21, 896 A.2d 933. In order to implement this right, the Secretary is given "broad authority" to review referendum petitions and to determine the validity of those petitions. *Knutson v. Dep't of Sec'y of State*, 2008 ME 124, ¶ 20 n.7, 954 A.2d 1054 (citing 21-A M.R.S. § 905(1)).

Here, as pointed out by Intervenor NER, neither of the statutes at issue define what is meant by the term "services" and, in such situations, the Law Court has indicated that it is appropriate to look at the context of the "provision at issue" when determining what the undefined language entails. *Id.* ¶ 12. Although the Secretary approached this issue as being "*de minimis*" the Court concludes that Mr. Huckey's act of delivering petitions does not fall within any reasonable definition of "service" toward initiating or promoting the initiative - any more than if his act had been to deliver those petitions to the post office to be mailed to the campaign. Moreover, there is competent evidence in the record indicating that Mr. Huckey delivered the petitions at the behest

of his employer, the Augusta City Clerk, and the City Clerk's office has a constitutional obligation to return the certified petitions to the petition circulators. Me. Const. Art. IV, Pt. 3, § 20. Given that the initiative campaign was already entitled to receive the petitions from the City Clerk's Office, and that Mr. Huckey is an agent of the City Clerk's Office, his act of delivering those petitions to the campaign office cannot be construed as a "service" to initiate or promote the campaign. Consequently, the Secretary neither committed error nor abused his discretion when he determined that the signatures on the petitions notarized by Mr. Huckey were valid.

Finally, the Court notes that the foregoing discussion has concerned what the Court believes to be the unambiguous language of sections 903-E. Even if the language of that section contained an ambiguity, however, the court would be required to interpret that section in a manner which favors the exercise of the peoples' right to initiate legislation. *McGee*, 2006 ME 50, ¶ 18, 896 A.2d 933 (citing *Ferency v. Sec'y of State*, 409 Mich. 569, 297 N.W.2d 544, 550 (Mich. 1980)). Although the Secretary did not engage in any "ambiguity" analysis, the approach he took with respect to each of the circulators is consistent with the approach a court would take if there is any ambiguity – namely, one which favors or facilitates the people's absolute right to directly enact law.

Because the Court has found that the Secretary's interpretation of Section 903-E was reasonable, particularly as applied to the facts as the Secretary found them, the Court defers to his interpretation. And given this conclusion, the Court declines to address the arguments and counterarguments made by the parties regarding whether Section 903-E is unconstitutional. *See*, *McGee* 2006 ME 30, ¶ 42 (Clifford, J. concurring*)*.

**2. Adequacy of the Secretary's Investigation on Remand**

Mr. Reed's second argument on appeal is that the Secretary refused to investigate evidence of fraud after remand. Mr. Reed contends that this alleged refusal constitutes an abuse of discretion and was arbitrary and capricious.

Both Mr. Reed and supporting Intervenors argue that once a credible allegation of fraud is made, the Secretary is obligated to investigate that allegation. The Court finds that this is precisely what the Secretary did. What Mr. Reed and the Intervenors really take issue with is the scope and adequacy of the Secretary's investigation. *See (*Pet'r's Br. at 16.) These parties argue that the Secretary ignored evidence that Mr. Reed presented, and that this evidence compelled the Secretary to take additional steps to determine whether petitions were fraudulent.

Consistent with the Secretary's plenary power to determine the validity of petitions, the Secretary may investigate "credible evidence of fraud" in the signature gathering process. *Me. Taxpayers Action Network v. Sec'y of State Id.* ¶ 25, n.11; *Palesky v. Sec'y of State*, 1998 ME 103, ¶ 3, 711 A.2d 129. The discretion to determine when an investigation is necessary, as well as the course and scope of such an investigation, however, is left to the Secretary. *Me. Taxpayers Action Network*, 2002 ME 64, ¶ 12 n.8, 795 A.2d 75. The Court is aware of no case law or other legal authority which requires the Secretary to utilize specific investigatory methods or procedures when determining whether fraud has occurred in the course of a signature gathering effort.

What Mr. Reed and the Intervenors are essentially arguing, is that this court should reverse the Secretary's decision in full because there were additional measures that the Secretary "could have" taken when conducting his investigation. (Pet'r's Reply Br. at 9.) Looking at what more the Secretary could have done, however, is not determinative when assessing whether what the Secretary did do constitutes an abuse of discretion or is arbitrary and capricious. That is because

the Court's determination must not be made by looking at whether a different Secretary would have made a different choice. It must be made by considering whether, given the facts, circumstances and governing law, the Secretary's actions were within the bounds of reasonable choices available to him or her. *Forest Ecology Network,* 2012 ME 36, ¶ 28, 39 A.3d 74. In this case, the facts, circumstances and governing law all lead the Court to conclude that the Secretary did not abuse his discretion.

In his Amended Determination, the Secretary found that the only credible evidence of fraud in this case was the evidence relating to the signatures collected by Ms. St. Peter. (Sec'y's Am. Det. ¶ 8-10; R. 28-31.) Mr. Reed vigorously disputes this and argues that there are other indicia of fraud as well. Mr. Reed, however, admits that some of the additional evidence he points to only raises the "possibility" of fraud. (Pet'r's Br. at 18.) ("this raises the significant possibility that the petitions were deliberately altered or back dated in order to be validated"). Other evidence Mr. Reed relies upon consists only of his counsel's statement that his office received information from an unnamed source that a coordinator for the campaign was aware that Ms. St. Peter forged signatures. (R. 24. p. 408.) This proffer from an unnamed source contrasts with what the Secretary found to be the absence of any reports from municipal officials suspecting that violations had occurred in the signature gathering effort. (Sec'y's Am. Det. ¶ 10.) The arguments also gloss over the fact that the Secretary took what the Petitioners would have to agree was appropriate action – the Secretary invalidated all signatures on the one petition circulated by Ms. St. Peter.

Because the court is acting in an appellate capacity, it may not reweigh the evidence which was before the Secretary. *Friends of Lincoln Lakes,* 2010 ME 18, ¶ 14, 989 A.2d 1128. Instead, the Court's job is to determine whether competent evidence supports the Secretary's decision. *Id*. Because of the time limits set by Maine's Constitution, the Secretary had only one week to

complete his investigation after this matter was remanded to him for the taking of additional evidence. *See* Me. Const. Art. IV, Pt. 3, § 2 (judicial review required to be completed "within 100 days from the date of filing of a written petition in the office of the Secretary of State"); 21-A M.R.S. § 905; *Reed v. Dunlap*, BCD-AP-20-02, (Order Mar. 23, 2020). Given the constitutional deadline and the evidence before him, the Court concludes that the Secretary's choice not to further pursue Mr. Reed's allegations of fraud was reasonable. Consequently, the Secretary did not abuse his discretion or act arbitrarily and capriciously when he did not further pursue the Petitioner's allegations of "possible" fraudulent conduct during the week he had to comply with the terms of the remand. *Forest Ecology Network,* 2012 ME 36, ¶ 28, 39 A.3d 74.

**3. The Secretary's Failure to Hold an Evidentiary Hearing**

Mr. Reed's third assignment of error is the Secretary's failure to hold an evidentiary hearing on Remand. He argues that the secretary's conclusion that he lacked authority to hold an evidentiary hearing was erroneous. However, assuming he is correct that the Secretary had the authority to hold an evidentiary hearing, the Court does not believe the Secretary was required to do so in this case. As discussed above, the Secretary's power to investigate and determine the validity of petitions is plenary and the Court is aware of no case which requires the Secretary to adhere to particular procedures or methods when conducting such an investigation. Further, neither Mr. Reed nor the intervenors have supplied the court with any authority which supports the proposition that the Secretary is required to hold an evidentiary hearing in order to allow a citizen who opposes an initiative petition the opportunity to cross examine proponents of the initiative. Consequently, the Court does not believe that the Secretary abused his discretion or committed an error of law when he refused to hold an evidentiary hearing.

20

**4. Validity of Other Signatures**

Mr. Reed's last argument is that the Secretary erroneously validated 492 signatures. Mr. Reed argues that, due to a number of different defects, these signatures should be declared invalid and not counted toward the total number of petition signatures. Because the invalidation of these 492 signatures would not be enough to change the outcome of the Secretary's Amended Determination, however, the Court declines to address the issue of the validity of these signatures. *Birks v. Dunlap,* No. BCD-AP-16-04, citing *Greenlaw v. Dunlap*, No. BCD-AP-16-05, 2016 Me. Bus. & Consumer LEXIS 9, *1 & n.1 (Apr. 8, 2016).

**CONCLUSION**

The Petitioner and supporting Intervenors have failed to meet their burden of persuasion in this matter. The Secretary of State did not err as a matter of law or abuse his discretion in interpreting and applying Maine law as to the authority of the three notaries at issue, and competent record evidence supports his findings. The Secretary did not err or abuse his discretion in failing to conduct an evidentiary hearing or further investigation as demanded by the Petitioner. The Secretary is the Constitutional Officer who has been granted plenary authority to determine the validity of petitions filed in a Citizen's Initiative, and the Court is required to review the findings made in the Amended Determination with substantial deference.

The entry will be: The Secretary of State's Amended Determination dated April 1, 2020 is AFFIRMED.


__4/13/2020_____                              _____/S_____

                                                      **M. MICHAELA MURPHY**

                                                      **BUSINESS AND CONSUMER COURT JUSTICE**

| STATE OF MAINE | BUSINESS & CONSUMER DOCKET |
| CUMBERLAND, ss. | DOCKET NO. BCD-AP-20-02 |

DELBERT A. REED,                                    )
                                                   )
      Petitioner                            )
                                                   )
     v.                                       )  **ORDER ON PETITIONER'S SECOND**
                                                   )  **MOTION TO TAKE ADDITIONAL**
                                                   )  **EVIDENCE**
MATTHEW DUNLAP, in his capacity of                 )
Secretary of State for the State of Maine,         )
                                                   )
      Respondent                            )
                                                   )
    and                                       )
                                                   )
MAINERS FOR LOCAL POWER PAC,                       )
NextEra ENERGY RESOURCES, LLC,                     )
INDUSTRIAL ENERGY CONSUMER
GROUP, and MAINE STATE CHAMBER
OF COMMERCE,

      Intervenors

Before the Court is Petitioner Delbert Reed's second motion to take additional evidence in support of his challenge to the Respondent Secretary of State's determination of the validity of petitions supporting the Citizen Initiative entitled "Resolve, To Reject the New England Clean Energy Connect Transmission Project" ("the petition"). This matter was previously remanded to the Secretary of State for the purpose of allowing the Secretary to take additional evidence. As ordered, upon remand, the Secretary took additional evidence concerning the activities of nine notaries public[1] and one petition circulator.[2] On April 1, 2020, the Secretary issued an Amended Determination that 2,052 petition signatures previously counted as valid in his March 4th decision

---

[1] The notaries are Melissa Letarte, Jacob Kiesman, Victoria Tapley, Christina Potter, David McGovern Sr., Michael Underhill, Wesley Ryan Hucky, Leah Flumerfelt, and Brittany Skidmore.
[2] The petition circulator is Megan St. Peter.

STATE OF MAINE　　　　　　　　　　BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.　　　　　　　　　　DOCKET NO. BCD-AP-20-02


DELBERT A. REED,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　**ORDER ON PETITIONER'S SECOND**
　　　　　　　　　　　　　　　　　　)　　**MOTION TO TAKE ADDITIONAL**
MATTHEW DUNLAP, in his capacity of　)　　**EVIDENCE**
Secretary of State for the State of Maine,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Respondent　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　and　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
MAINERS FOR LOCAL POWER PAC,　　)
NextEra ENERGY RESOURCES, LLC,　　)
INDUSTRIAL ENERGY CONSUMER
GROUP, and MAINE STATE CHAMBER
OF COMMERCE,

　　　　　　　　　　Intervenors

　　　Before the Court is Petitioner Delbert Reed's second motion to take additional evidence in

support of his challenge to the Respondent Secretary of State's determination of the validity of

petitions supporting the Citizen Initiative entitled "Resolve, To Reject the New England Clean

Energy Connect Transmission Project" ("the petition"). This matter was previously remanded to

the Secretary of State for the purpose of allowing the Secretary to take additional evidence. As

ordered, upon remand, the Secretary took additional evidence concerning the activities of nine

notaries public[1] and one petition circulator.[2] On April 1, 2020, the Secretary issued an Amended

Determination  that 2,052 petition signatures previously counted as valid in his March 4th decision

---

[1] The notaries are Melissa Letarte, Jacob Kiesman, Victoria Tapley, Christina Potter, David McGovern Sr., Michael Underhill, Wesley Ryan Hucky, Leah Flumerfelt, and Brittany Skidmore.
[2] The petition circulator is Megan St. Peter.

1

must be invalidated due the conduct of three[3] of the nine notaries, and that 174 signatures previously counted as valid must be invalidated due to the conduct of the petition circulator.

Citing 5 M.R.S. § 11006(1)(A), Reed now moves for the taking of further evidence before the Superior Court. Section 11006(1)(A) states:

> Judicial review shall be confined to the record upon which the agency decision was based, except as otherwise provided by this section.
>
> A. In the case of the failure or refusal of an agency to act or of alleged irregularities in procedure before the agency which are not adequately revealed in the record, evidence thereon may be taken and determination made by the reviewing court.

Reed argues that the Secretary failed to conduct an adequate investigation into potential fraud in the petition drive and that this failure amounts to a failure or refusal to act under section 11006.

The Court disagrees. This is not a situation where the Secretary has failed or refused to act. As this Court has previously noted, the Secretary has "plenary power to investigate and determine the validity of petitions." *Maine Taxpayers Action Network v. Sec'y of State,* 2002 ME 64, n. 8, 795 A.2d 75 (citing *Opinion of the Justices,* 116 Me. 557, 580-82, 103 A. 761, 771-72 (1917)). Here, the Secretary has upon remand once again utilized this power to investigate the validity of the petitions  Importantly, the investigation included consideration of evidence submitted by Reed. Although Reed may disagree with the Secretary's decision that the evidence presented to him did not warrant a "full-scale investigation of potential fraud" this does not change the fact that the Secretary's decision was itself an act, and not a refusal to act. *See Lingley v. Me. Workers' Comp. Bd.*, 2003 ME 32, ¶ 9, 819 A.2d 327. Consequently, there has been no "failure or refusal to act" as that phrase is defined under Maine law which would permit this Court to take additional evidence

---

[3] The three notaries are David McGovern Sr., Michael Underhill, and Brittany Skidmore.

2

and make its determination based upon evidence other than what is in the record that has been compiled after the second review and investigation by the Secretary.

Further, the Court also notes that Reed has not made a *prima facie* showing of "alleged irregularities in procedure." *Carl L. Cutler Co. v. State Purchasing Agent*, 472 A.2d 913, 918 (Me. 1984). The phrase – "irregularities in procedure" – is to be distinguished from the evidence of fraud that the Secretary did address upon remand. Reed has not pointed to any irregularity or defect in the procedure used by the Secretary after remand, and it appears that the Secretary used the same procedure that he has used in multiple other investigations or reviews of petitions in citizens initiatives. Reed was afforded the opportunity to present evidence to the Secretary and it appears that the only evidence that was not pursued or addressed by the Secretary, was not sufficiently identified by the Petitioner until after the Secretary issued his Amended Determination.[4]

The Court would note that this Order does not address the merits of any argument the Petitioner and other Intervenors may make in further briefing, as the two orders issued to date address only the adequacy and legality of the Record that the parties and the Court must rely upon in further proceedings. Nothing in this decision will affect the Petitioner's ability to challenge whether there is sufficient competent evidence in the Record to support the Amended Determination made by the Secretary, whether the Secretary abused his discretion in coming to

[4] For reasons not clear to the Court, Petitioner did not disclose to the Secretary the name of the individual who allegedly had information that an individual organizer for Revolution Field Strategies was aware of Ms. St. Peter's activities in relation to two forged signatures that were invalidated at the municipal level before this legal challenge began. The name was disclosed to the Court in a teleconference on April 1, 2020 after the Amended Determination was filed with the Court. Petitioner was offered the opportunity by the Court to supplement the record with an affidavit from this individual, but was advised by counsel for Petitioner that it was unclear whether the individual would cooperate with counsel.

that determination, or to make any legal argument entitling Petitioner to a remedy under the Maine Administrative Procedures Act or Rule 80 C of the Maine Rules of Civil Procedure.

**The entry is:**

**Petitioner Delbert Reed's Second Motion to Take Additional Evidence is DENIED.**

**The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).**

Date:____04/03/2020_____                          _____/S_____
                                                                     **M. Michaela Murphy**
                                                                     **Justice, Business and Consumer Court**

4

must be invalidated due the conduct of three[3] of the nine notaries, and that 174 signatures previously counted as valid must be invalidated due to the conduct of the petition circulator.

Citing 5 M.R.S. § 11006(1)(A), Reed now moves for the taking of further evidence before the Superior Court. Section 11006(1)(A) states:

> Judicial review shall be confined to the record upon which the agency decision was based, except as otherwise provided by this section.
>
> A. In the case of the failure or refusal of an agency to act or of alleged irregularities in procedure before the agency which are not adequately revealed in the record, evidence thereon may be taken and determination made by the reviewing court.

Reed argues that the Secretary failed to conduct an adequate investigation into potential fraud in the petition drive and that this failure amounts to a failure or refusal to act under section 11006.

The Court disagrees. This is not a situation where the Secretary has failed or refused to act. As this Court has previously noted, the Secretary has "plenary power to investigate and determine the validity of petitions." *Maine Taxpayers Action Network v. Sec'y of State,* 2002 ME 64, n. 8, 795 A.2d 75 (citing *Opinion of the Justices,* 116 Me. 557, 580-82, 103 A. 761, 771-72 (1917)). Here, the Secretary has upon remand once again utilized this power to investigate the validity of the petitions Importantly, the investigation included consideration of evidence submitted by Reed. Although Reed may disagree with the Secretary's decision that the evidence presented to him did not warrant a "full-scale investigation of potential fraud" this does not change the fact that the Secretary's decision was itself an act, and not a refusal to act. *See Lingley v. Me. Workers' Comp. Bd.*, 2003 ME 32, ¶ 9, 819 A.2d 327. Consequently, there has been no "failure or refusal to act" as that phrase is defined under Maine law which would permit this Court to take additional evidence

---

[3] The three notaries are David McGovern Sr., Michael Underhill, and Brittany Skidmore.

2

and make its determination based upon evidence other than what is in the record that has been compiled after the second review and investigation by the Secretary.

Further, the Court also notes that Reed has not made a *prima facie* showing of "alleged irregularities in procedure." *Carl L. Cutler Co. v. State Purchasing Agent*, 472 A.2d 913, 918 (Me. 1984). The phrase – "irregularities in procedure" – is to be distinguished from the evidence of fraud that the Secretary did address upon remand. Reed has not pointed to any irregularity or defect in the procedure used by the Secretary after remand, and it appears that the Secretary used the same procedure that he has used in multiple other investigations or reviews of petitions in citizens initiatives. Reed was afforded the opportunity to present evidence to the Secretary and it appears that the only evidence that was not pursued or addressed by the Secretary, was not sufficiently identified by the Petitioner until after the Secretary issued his Amended Determination.4

The Court would note that this Order does not address the merits of any argument the Petitioner and other Intervenors may make in further briefing, as the two orders issued to date address only the adequacy and legality of the Record that the parties and the Court must rely upon in further proceedings. Nothing in this decision will affect the Petitioner's ability to challenge whether there is sufficient competent evidence in the Record to support the Amended Determination made by the Secretary, whether the Secretary abused his discretion in coming to

4 For reasons not clear to the Court, Petitioner did not disclose to the Secretary the name of the individual who allegedly had information that an individual organizer for Revolution Field Strategies was aware of Ms. St. Peter's activities in relation to two forged signatures that were invalidated at the municipal level before this legal challenge began. The name was disclosed to the Court in a teleconference on April 1, 2020 after the Amended Determination was filed with the Court. Petitioner was offered the opportunity by the Court to supplement the record with an affidavit from this individual, but was advised by counsel for Petitioner that it was unclear whether the individual would cooperate with counsel.

that determination, or to make any legal argument entitling Petitioner to a remedy under the Maine Administrative Procedures Act or Rule 80 C of the Maine Rules of Civil Procedure.

**The entry is:**

> **Petitioner Delbert Reed's Second Motion to Take Additional Evidence is DENIED.**

**The clerk is directed to incorporate this order into the docket by reference.  M.R. Civ. P. 79(a).**

Date:____04/03/2020_____          _____/S_____
                                                                 **M. Michaela Murphy**
                                                                 **Justice, Business and Consumer Court**

4

**Delbert Reed**


**v.**

Secretary of State, Matthew Dunlap
Mainers for Local Power (Intervenor)
NextEra Energy Resources, LLC (Intervenor)


**Delbert Reed**
      Counsel:                  Jared S. DesRosiers, Esq.
                                  Nolan L. Reichl, Esq.
                                  Newall A. Auger, Esq.
                                      Pierce Atwood LLP
                                      Merrill's Wharf, 254 Commercial Street
                                      Portland, ME 04101


**Matthew Dunap,**
**Secretary of State**                  Phyllis Gardner, AAG
                                  6 State House Station
                                    Augusta, ME 04333


**Mainers for Local Power**        David M. Kallin, Esq.
                                  Amy K. Olfene, Esq.
                                  Adam R. Cote, Esq.
                                    DrummondWoodsum
                                    84 Marginal Way, Ste 600
                                    Portland, ME  04101-2480


**NextEra Energy Resources, LLC**   Christopher Roach, Esq.
                                  Roach, Ruprecht, Sancchez,
                                  527 Ocean Ave, Ste 1
                                  Portland, ME  04103


**Industrial Energy Consumer Group**  Anthony W. Buxton, Esq.
                                  Robert B. Borowski, Esq.
                                  Sigmond D. Schutz, Esq.
                                  PretiFlaherty
                                  PO Box 1058
                                  Augusta, ME  04332-1058


**Maine State Chamber of Commerce**  Gerald Petrucelli, Esq.
                                  Nicole Bissonnette, Esq.

Petrucell, Martin, Haddow
PO Box 17555
Portland, ME  04112-8555_